UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JIMMY DILWORTH,

                                                Case No. No. 19-12134

                Plaintiff,                   District Judge Sean F. Cox

v.                                            Magistrate Judge R. Steven Whalen

ANDREW SAUL,
COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____ /

## REPORT AND RECOMMENDATION

Plaintiff Jimmy Dilworth brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for  Supplemental Security Income ("SSI") under Title XVI  of the Social Security Act.  The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment  [ECF No. 24] be GRANTED and that Plaintiff's Motion for Summary Judgment [ECF No. 19] be DENIED.

# I.   PROCEDURAL HISTORY

On September 25, 2015, Plaintiff filed an application for SSI, alleging disability as of April 10, 2008 (Tr. 191).   Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on November 7, 2017 in Livonia, Michigan (Tr. 15). Administrative Law Judge ("ALJ") B. Lloyd Blair presided.   Plaintiff, represented by attorney Eva Guerra, testified (Tr. 19-31), as did Vocational Expert ("VE") John Roland Stokes (Tr. 31-36).   On December 22, 2017, ALJ Blair determined that Plaintiff was not disabled (Tr. 76-86).   On May 22, 2019, the Appeals Council reviewed the ALJ's determination, finding that the ALJ erred by declining to consider seven pages of clinical records submitted following the hearing but before the ALJ's December 22, 2017 determination issued (Tr. 5).   However, the Appeals Council noted that the additional material did not support a greater degree of limitation than found in the ALJ's non-disability finding (Tr. 5-6).   Plaintiff filed suit in this Court on July 22, 2019.

# II.  BACKGROUND FACTS

Plaintiff, born November 12, 1968, was 49 at the time of the administrative decision (Tr. 86, 191).   He completed 12th grade but took special education classes while in elementary school (Tr. 226).   He worked previously as a house framer and fast food employee (Tr. 226). He alleges disability as a result of herniated spinal discs, spinal stenosis, chronic pain, depression, and a learning disorder (Tr. 225).

### A.  Plaintiff's Testimony

Plaintiff offered the following testimony:

He stood 6' 4", weighed 280 pounds,  and was right-handed (Tr. 19).  He completed 12th grade (Tr. 20).  He did not have a driver's license (Tr. 20).  He had not worked since 1998 due to headaches, depression, and lower back, neck, and left leg pain (Tr. 20).  The back pain began in 1998 (Tr. 21).  His back pain was improved by reclining (Tr. 22). His condition was not improved by injections or physical therapy (Tr. 21-22).  None of his treaters had recommended back surgery (Tr. 21).  His left leg pain began in 2000 (Tr. 21). His neck pain began in 2015 following a car accident (Tr. 22).  He experienced the neck pain intermittently which contributed to his headaches (Tr. 23).  He currently used Norco for pain but did not experience side effects (Tr. 22).  On a scale of one to ten, he experienced level seven to eight pain while using Norco (Tr. 22).

Plaintiff received mental health treatment in the past including monthly counseling sessions and a three-month medication review by a psychiatrist (Tr. 24).  He discontinued treatment after losing his insurance and had not taken psychotropic medication in the last six months (Tr. 24).  He could not remember what psychotropic medication he had been prescribed but denied side effects (Tr. 24).  He denied psychiatric hospitalizations (Tr. 25).

Plaintiff lived with his mother and sister in a one-story single-family home (Tr. 25, 29).  He was able to prepare simple meals (Tr. 25).  He did not do laundry, shop for groceries, visit with friends or family, or belong to any organizations (Tr. 26).  He spent his

days watching television (Tr. 26). He was unable to climb stairs, was "barely" able to squat, and could not lift 10 pounds (Tr 26). He was limited to walking half a block, standing for six minutes, and sitting for 15 (Tr. 27). He was prescribed a cane in 2003 (Tr. 27).

In response to questioning by his attorney, Plaintiff testified that he currently took Klonopin for depression and anxiety (Tr. 28). His anxiety was characterized by mental fog, nervousness, and shortness of breath (Tr. 28). Symptoms of depression included self-isolation (Tr. 30). He took Cymbalta, Risperdal, and Trazodone during his mental health treatment but had taken the medication only sporadically (Tr. 28-29). He regularly heard voices and sometimes saw "little black things" in his field of vision (Tr. 29). He was unable to see a pain doctor due to insurance limitations (Tr. 31).

## B. Medical Records[1]

### 1. Records Related to Plaintiff's Treatment

A June, 2003 CT of the lumbar spine showed "mild" stenosis at L4-L5 with a protruding disc at L5-S1 (Tr. 292). A June, 2010 CT of the lumbar spine showed mild to moderate degenerative facet arthrosis at L4-L5 with "moderately severe" disc space narrowing at L5-S1 with "moderate" foraminal compromise (Tr. 294).

---

[1]

Records significantly predating the relevant period of August 17, 2015 to December 22, 2017, while reviewed in full, are omitted from the present discussion (Tr. 86).

In August, 2014, Plaintiff received epidural injections and was prescribed hydrocodone for back pain (Tr. 370, 372).  In September, 2014 psychiatrist Dosyng Yoon, M.D. diagnosed Plaintiff with a depressive disorder without psychosis and a learning disorder (Tr. 316).  Dr. Yoon assigned Plaintiff a GAF of 45, noting the presence of economic and housing problems[2] (Tr. 316).  Plaintiff exhibited symptoms of depression but normal psychomotor activity, speech, thought content, impulse control, judgment, and concentration (Tr. 311, 313).  In October, 2014, he received an additional epidural injection (Tr. 368).   The following month, Plaintiff reported adequate pain control with medication (Tr. 422).  Mental health treating records show that Plaintiff was prescribed Risperdal in November, 2014, Cymbalta in February, 2015, and Trazodone in March, 2015 (Tr. 309). December, 2014 treating notes note that Plaintiff used a cane to walk (Tr. 364).  He reported that Norco and Flexeril with hydrocodone "as needed" kept pain at "tolerable" levels (Tr. 360, 363). The same month, Plaintiff requested Xanax for "anxiety" but did not appear anxious (Tr. 517-518).

In January and February, 2015, Plaintiff received  epidural injections (Tr. 359). Plaintiff reported level "nine" pain (Tr. 358).  In March, 2015, Plaintiff continued to report significant pain (Tr. 351).  Treating records note a normal mood and affect (Tr. 351).  June,

---

[2]A GAF score of 41 to 50 indicates '[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job.  *Diagnostic and Statistical Manual of Mental Disorders-Text Revision* (4th ed. 2000) ("*DSM–IV–TR*"), 34.

2015 records note that Plaintiff experienced severe neck pain after a car accident the same month (Tr. 337).   A CT was negative for neck abnormalities (Tr. 334).   In August, 2015 Plaintiff  reported good results from chiropractic treatment (Tr. 330).  A CT from the same month showed degenerative changes with "moderate" neural foraminal narrowing (Tr. 403). Mental health records from the same month state that Plaintiff was prescribed Klonopin and Risperdal (Tr. 301).  Plaintiff reported auditory hallucinations but demonstrated normal speech, language skills, thought process and associations (Tr. 299).  In September, 2015, Plaintiff requested a referral to a surgeon related to a 1987 gunshot wound (Tr. 327).  A November, 2015 MRI showed moderate multilevel degenerative changes at L4-L5 and L5-S1 (Tr. 506).  An MRI of the cervical spine showed minimal degenerative changes (Tr. 508). December, 2015 records note lumbosacral and neck pain with an abnormal gait (Tr. 380). Physical treating records showed a normal mood and affect (Tr. 380).  Mental health records noted a flat affect, slowed psychomotor activity, and reports of auditory hallucinations but were otherwise normal (Tr. 469-471).  Plaintiff alleged uncontrolled anxiety (Tr. 513).

January, 2016 records show that Plaintiff received an epidural injection (Tr. 419). April, 2016 pain management records note that a recent urine sample was positive for cocaine (Tr. 406).  Plaintiff declined a referral for drug addiction treatment (Tr. 406).  He exhibited a normal mood and affect (Tr. 407).   In May, 2016, Plaintiff reported the auditory hallucination of hearing "somebody walking up the steps" (Tr. 450).   He reported that Cymbalta helped with pain and depression (Tr. 450).  The same month, Plaintiff requested

additional pain medication but stated that he did not want back surgery (Tr. 511).  June, 2016 mental health treating records show that Plaintiff was currently taking Busbar, Cymbalta, Risperdal, and Trazodone (Tr. 440).  He reported that he did not want to continue taking Risperdal after having "seen too many commercials with bad things" (Tr. 441).  He reported that Cymbalta helped calm his nerves (Tr. 441).  His memory, speech, mood, and affect were normal (Tr. 444).  He denied hallucinations and exhibited normal concentrational abilities (Tr. 445).  The following month, Plaintiff sought emergency treatment for elbow pain (Tr. 528). He exhibited a normal mood and affect (Tr. 529).  Imaging studies showed a dislocated right elbow (Tr. 532).

In February, 2017, Plaintiff reported that his medication was stolen (Tr. 485).  June through November, 2017 records show that Plaintiff was prescribed Norco for continued back pain (Tr. 548-551).

## 2.  Non-Treating Records

In December, 2015, Rom Kriauciunas, Ph.D. performed a non-examining review of the treating records on behalf of the SSA, finding that Plaintiff experienced mild restriction in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 67).  March, 2016 records show that Plaintiff failed to appear for a consultative physical examination scheduled by the SSA (Tr. 390).

July, 2017 psychological testing and evaluation records note Plaintiff's report of depression characterized by sadness, poor concentration, and difficulty sleeping (Tr. 537). Plaintiff reported "intermittent, transient auditory and visual hallucinations" since the age of 12 (Tr. 537). He appeared cooperative with full orientation (Tr. 537). He used his fingers to count backwards (Tr. 537). Wechsler Adult Intelligence Scale-Fourth Edition ("WAIS-IV") testing showed borderline scores in verbal comprehension and perceptual reasoning with low average scores in working memory and processing speed with a full scale IQ of 72 (Tr. 538). Paige VanNorman, MS, working under the direction of Franklin Sollars, Ph.D. found that Plaintiff had "limited" ability in the areas of hygiene, learning, mobility self-direction, living independently, and in financial competence (Tr. 540). VanNorman stated that Plaintiff did "not have interest or motivation in pursuing a job without manual labor" (Tr. 541). She found the diagnoses of major depression, schizophrenia, and  psychotic disorder (Tr. 541). She assigned Plaintiff a GAF of 40[3] (Tr. 541). Plaintiff's ability to relate to others, deal with the public, interact with supervisors, and deal with stress was deemed fair with poor to no ability to use judgment or work independently (Tr. 543). VanNorman found a good ability to concentrate and understand, remember, and carry out simple job instructions (Tr. 543-544).

---

[3]

A GAF score of 31 to 40 indicates "some impairment in reality testing or communication OR major impairment in several areas such as work, school, family relations, judgment, thinking or mood." *DSM-IV-TR* at 34.

### C.  Vocational Testimony

VE Stokes classified Plaintiff's past work as a fast food worker as unskilled and exertionally light[4] (Tr. 32-33).  ALJ Blair then posed the following set of limitations to the VE, describing a hypothetical individual of Plaintiff's age, educational level, and work history:

> [A]ssume a hypothetical individual who could meet the demands of light work, should never use ladders, scaffolds or ropes.  Should only occasionally use ramps, stairs, stooping, crouch, crawl or balance.  Should avoid walking on uneven surfaces, only occasionally bend or twist or turn at the waist or neck. Should not go on assembly line, skill[ed] work.  No jobs requiring teamwork or working with the public.  In your opinion, could such an individual do claimant's past work? (Tr. 33-34).

The VE testified that the above limitations would not allow for Plaintiff's past  work as a fast food worker but allowed for the unskilled work of a small products assembler (193,000 positions in the national economy); laundry worker (439,000); and machine feeder (74,000) (Tr. 34-35).  VE Stokes testified that the use of a cane for walking would not affect the job numbers (Tr. 35).  He stated that his testimony was based on the information found

---

[4]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

in the *Dictionary of Occupational Titles* ("*DOT*") (Tr. 35).

In response to questioning by Plaintiff's attorney, the VE stated that the inability to function independently, use judgment, or adhere to attendance policies, would at a minimum preclude all of the above-cited jobs (Tr. 35-36).

### D.   The ALJ's Determination

Citing the medical transcript, ALJ Blair found that Plaintiff experienced the severe impairments of "obesity; degenerative disc disease of the lumbar spine; lumbar disc bulge; cervical degenerative changes; major depressive disorder; [and] anxiety disorders" but that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 79).   The ALJ found that Plaintiff experienced moderate restriction in understanding, remembering, and applying information; interacting with others; and concentration, persisting, and maintaining pace with only mild restriction in the ability to adapt and manage himself  (Tr. 80).   ALJ Blair determined that Plaintiff had an RFC for light work with the following additional restrictions:

> [N]ever use ladders, scaffolds, or ropes; he can occasionally use ramps, stairs, stoop, kneel, crouch, crawl, or balance; he should avoid walking on uneven surfaces; he can occasionally bend, twist, and turn at the waist and neck; he uses a cane to ambulate; he should only have simple unskilled work; he should have work that does not require team work or working with the public (Tr. 81).

Citing the VE's testimony, the ALJ determined that while Plaintiff was unable to perform his past relevant work, he could perform the work of a small product assembler, laundry work, and machine feeder (Tr. 34-35, 84-85).

The ALJ discounted Plaintiff's professed degree of physical and psychological limitation.  The ALJ cited treating records stating that Plaintiff experienced "a lot" of improvement from injections for back pain (Tr. 81).  He noted that Plaintiff's claims of disabling back pain were undermined by his statement to a treating source that he was "not interested" in back surgery (Tr. 82).  The ALJ cited multiple treating observations of "drug seeking behavior" (Tr. 82).  He acknowledged a mental status examination showing anxiety, constricted affect, auditory hallucinations, and delusion, but noted that the same examination also showed normal "attitude, behavior, psychomotor activity, speech, thought process, attention, concentration" with intact impulse control, judgment, and insight (Tr. 82).

### E.  Appeals Council Decision

At the request of Plaintiff, the Appeals Council reviewed ALJ Blair's determination (Tr. 4).  On May 22, 2019, the Appeals Council found that the ALJ erred by declining to consider material submitted after the administrative hearing as untimely (Tr. 5).  The Appeals Council noted that the seven-page post-hearing submission of medical records was in fact timely and ought to have been considered (Tr. 5-6).  The Appeals Council nonetheless adopted the ALJ's non-disability determination, finding that the newer records did not form a basis for changing the determination (Tr. 5).

### III.  STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted).   The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. *Biestek* at 139 S. Ct. at1152; 42 U.S.C. §405(g).   "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r. of Soc. Sec*., 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs*., 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen*,  800 F.2d 535, 545 (6th Cir. 1986)(*en banc*).  Where  substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)).  However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight."

*Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Her v. Commissioner of Social Sec.,* 203 F.3d 388, 391–92 (6th Cir. 1999).

# V.  ANALYSIS

## A.  The ALJ's Step Three Findings

Plaintiff disputes the Step Three finding that he did not meet or equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Plaintiff's Brief,* ECF No. 19, PageID.623.  Regarding his physical condition, he argues that the ALJ erred by failing to cite Listing 1.04A (Disorders of the spine) and declining to find that the back condition was not disabling.  *Id.* at 624-626.  Plaintiff contends that the ALJ's Step Three findings were also undermined by the failure to consider the effect of obesity on the back problems.  *Id.*  As to his psychological conditions, Plaintiff argues that he meets Listings 12.03 (Schizophrenia Spectrum and other psychotic disorders) and 12.06 (Anxiety and obsessive compulsive disorders).[5]

Defendant disputes Plaintiff's contention that he meets Listing 1.04, noting that none of the imaging studies show "nerve root compression" as required for a disability finding under Listing 1.04.  *Defendant's Brief,* ECF No. 24, PageID.653.  Defendant likewise disputes

---

[5]

In addition to the argument that Plaintiff meets several listings, he states that his various physical and mental conditions considered together "medically equal" a listed impairment. ECF No. 19, PageID.627-629.  However, he does not develop this argument or cite the applicable standard for an equivalency finding set forth in 20 C.F.R. § 416.926(b).  "'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to  mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.'" *McPherson v Kelsey*, 125 F3d 989, 995–96 (6th Cir. 1997)(punctuation altered)(*quoting Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir.1995)). As such, I decline to consider whether he medically equals a listed impairment.

Plaintiff's contention that he meets Listings 12.03 and/or 12.06, noting that Plaintiff cannot show either marked or extreme psychological limitation as required for either listing. *Id.* at 657.

"Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed.Appx. 411, 414, 2011 WL 1228165, *2 (6th Cir. April 1, 2011). At Step Three of the administrative sequence, "[a] Claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled [ ] and entitled to benefits." The claimant must satisfy all of listing's criteria for a finding that s/he meets a listed impairment. *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Houston v. Colvin*, 2017 WL 82976, at *2 (E.D. Mich. January 10, 2017)(Drain, J.)(same). The claimant bears the burden of establishing that s/he meets or medically equals a listed impairment. *Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987).

## 1. The Physical Conditions

Listing 1.04 (Disorders of the spine) requires a threshold finding of "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [or] vertebral fracture[] resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Pt. 404, Supt. P, App. 1, § 1.04. To meet Listing 1.04A,

the claimant must also show:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). *Id.*

The record shows that an August, 2015 CT of the lumbar spine indicated moderate neural formainal narrowing but did not include a finding of nerve root impingement or "compromise," which is a threshold requirement for a finding of disability under Listing 1.04 (Tr. 403). Likewise, a November, 2015 MRI of the lumbar spine showed moderate bilateral neural foraminal narrowing with only "borderline" stenosis (Tr. 506). While Plaintiff argues that he meets all the requirements of the Listing, citing records documenting his allegations of neuro-anatomic distribution of pain, range of motion limitation, sensory weakness, and a positive straight leg raising test (Tr. 332, 338, 364, 379, 391-398, 407, 420, 430, 435-437, 439, 507, 477, 505, 514, 525, 527), the failure show evidence supporting the threshold requirement of nerve root compromise defeats the argument for disability under the Listing. *See Bartee v. Comm'r of Soc. Sec.*, 2017 WL 9473405, at *8 (E.D. Mich. Jan. 31, 2017), *adopted in part and rejected in part on other grounds*, 2017 WL 1173771 (E.D. Mich. Mar. 30, 2017)(claimant's allegations of radiating pain inadequate to demonstrate nerve root compromise as required to meet Listing 1.04); *See also Duncan, supra,* 801 F.2d at 855; *Houston*, at *2.

While the ALJ did not cite Listing 1.04, he noted that none of the "medical signs, symptoms, laboratory findings or degree of functional limitation" supported a finding of disability under any listing at Step Three (Tr. 79). The ALJ also provided a thorough discussion of Plaintiff's treatment for the back condition, noting that the imaging studies created during the relevant period did not show "severe" findings (Tr. 83). The ALJ permissibly noted that Plaintiff's spinal symptoms resolved or were greatly improved with epidural injections and that Plaintiff declined consideration of more aggressive treatment (Tr. 81-82). Further, the ALJ did not err in noting that Plaintiff's professed degree of back limitation was also undermined by a history of drug seeking behavior (Tr. 82, 84). *See Jackson v. Comm'r of Soc. Sec*., 2015 WL 4611472 at *7 (W.D. Mich. July 31, 2015)(*citing Massey v. Comm'r of Soc. Sec*., 400 Fed.Appx. 192, 194 (9th Cir. October 19, 2010))("Courts have held that [drug seeking] behavior can form a basis for rejecting a claimant's testimony regarding pain and limitations"). Plaintiff's unexplained failure to appear for a scheduled consultative physical examination also hampered his claim of disabling physical limitation. *See* 20 C.F.R. § 416.918 (failure to provide good reason to skip consultative examination may result in finding of non-disability).

Plaintiff's related claim that the ALJ erred by failing to address or account for obesity-related physical or mental limitations is also unavailing. Under SSR 19-2p, "[o]besity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment," and each case is evaluated "based on the information in

[that] case record." 2019 WL 2374244 at *22925 (May 20, 2019). Here, the ALJ both acknowledged (Tr. 83, ¶ 2) and took into account limitations resulting from obesity, finding that the condition precluded the use of ladders, scaffolds, or ropes; walking on uneven surfaces; or more than occasional postural activity (Tr. 83, ¶ 7).

## 2.  The Psychological Conditions

Plaintiff's claim that he meets Listing 12.03 (Schizophrenia Spectrum and other psychotic disorders) and/or 12.06 (Anxiety and obsessive compulsive disorders) is also defeated by his failure to show the presence of either marked or extreme psychological limitation. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § § 12.03, 12.06. Threshold requirements under either listing aside, to establish disability under either listing under the A and B criteria of either listing, a claimant must show two marked or one extreme limitation in the following abilities: (1). "Understand, remember, or apply information;" (2.) "Interact with others;" (3.) "Concentrate, persist, or maintain pace" and (4.) "Adapt or manage oneself." *Id.*

In the first category, the ALJ found no more moderate limitations, noting that during psychological treatment, Plaintiff exhibited grossly intact recent and remote memory (Tr. 80). In the category of interacting with others, the ALJ also found moderate limitation, noting that Plaintiff's attitude and behavior was normal (Tr. 80). In the third category, the ALJ noted that while Plaintiff had to count backwards on his fingers, he exhibited normal attention and concentrational abilities (Tr. 80). The ALJ supported his finding of only mild limitations in adaptation by noting appropriate dress and hygiene and the ability to attend to self care tasks

without help (Tr. 80).  The ALJ's findings are consistent with my own review of the records showing consistently full orientation and normal speech, language skills, thought process and associations (Tr. 299, 380, 444, 469-471, 529).  The fact that Plaintiff cites other portions of the record suggesting more than moderate limitation is of no import.  Because substantial evidence supports the ALJ's finding of (at most) moderate psychological limitation, the Step Three findings should remain undisturbed.

### B.  The Residual Functional Capacity

Plaintiff also takes issue with the Residual Functional Capacity ("RFC"), arguing that his physical and mental limitations contradict the finding that he could perform a significant range of exertionally light, unskilled work.  ECF No. 19, PageID.629 (*citing* Tr. 81).  He also argues that the RFC's restriction to simple work, without more, does not account for his full degree of concentrational limitation. *Id.* at 630.

An RFC describes an individual's residual abilities. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). The "RFC is to be an 'assessment of [a claimant's] remaining capacity for work' once [his] limitations have been taken into account" *Id.* (*quoting* 20 C.F.R. § 416.945). In determining a claimant's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. §§ 404.1545(a)(1); 416.945 (RFC must be based on all "relevant evidence"). The ALJ must consider the alleged physical, mental, and environmental restrictions in crafting the RFC. §§ 404.1545(b-d); 416.945; SSR 96-8p, 1996 WL 374184, at *6 (June 2, 1996).  An ALJ is permitted to draw

from multiple medical sources in whole or part in crafting the RFC. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013); SSR 96-8p at *2.

Contrary to Plaintiff's argument, the RFC is well supported and well explained. While Plaintiff is correct that a portion of the evidence *could* support a disability determination, substantial evidence supports the RFC for light, unskilled work (Tr. 81). As to the allegations of physical limitation, the ALJ cited treating records showing good results from the conservative treatment of epidural injections, branch blocks, and radio-frequency treatment (Tr. 81). He noted that Plaintiff was "not fully compliant with treatment" (Tr. 84) and that the claims of back pain were undermined by illicit drug use, drug seeking behavior, and disinterest in more aggressive treatment (Tr. 81, 84, 511). The ALJ found that the most recent imaging studies supported the finding that Plaintiff could perform light work with a preclusion on the use of ladders, scaffolds, and ropes, and only occasional stooping, kneeling, crouching, crawling, balancing, and the use of ramps and stairs (Tr. 81, 84). The ALJ's finding that Plaintiff could perform light work but limited postural activity is consistent with my own review of the record showing at most moderate abnormalities of the lumbar spine (Tr. 403, 506) and good results from chiropractic treatment (Tr. 330).

Regarding the psychological conditions, Plaintiff cites *Edwards v. Barnhart,* 383 F. Supp. 2d 920 (E.D. Mich. 2005), in support of his argument that the RFC's limitations to "simple, unskilled" are insufficient to account for the moderate limitations in concentration, persistence, or pace found by the ALJ. ECF No. 19, PageID.630 (*citing* Tr. 81). In *Edwards,*

the Court found that the hypothetical modifiers of "simple, routine, unskilled work" were insufficient to account for moderate limitation in concentration, persistence, or pace, noting that the such restrictions alone did not address the inability "to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job." *Id.* at 930.

However, Plaintiff's reliance on *Edwards* is unavailing.  First, Edwards cannot be read to impose a bright line rule for accounting for moderate concentrational deficiencies. Plaintiff's argument that the above modifiers in this case are automatically insufficient to account for moderate concentrational limitations is not supported by Sixth Circuit case law or cases from this District. *See Smith-Johnson v. Comm'r of Soc. Sec*., 579 Fed. Appx. 426, 437, 2014 WL 4400999, *10 (6th Cir. September 8, 2014)(moderate concentrational limitations adequately addressed by restricting the claimant to unskilled, routine, repetitive work); *Bellman v Comm'r of Soc. Sec,* 2019 WL 1521994, at *8 (E.D. Mich. March 20, 2019)(Grand, M.J.), report and recommendation adopted No. 18-10872, 2019 WL 1515258 (E.D. Mich, April 8, 2019)("Because there is no bright-line rule requiring an ALJ to account for moderate [concentrational] limitations ... in a certain way, the Court must – given the particular evidence in the case at hand – determine whether the limitations imposed by the ALJ adequately accounted for" the moderate limitation).  The transcript includes psychological examination and treating records  showing a cooperative attitude, memory, normal speech, language skills, thought process, associations, concentration, and judgment (311-313, 298-300).  The treatment records for the physical conditions consistently note an unremarkable psychological state,

including full orientation and a normal mood and affect (Tr. 351, 380-381, 407, 444-445, 517-518, 529).  In short, "the evidence at hand" in this case does not require greater psychological restriction than found in the RFC.  *Bellman* at *8.

In addition, the psychological restrictions set forth in the present RFC for unskilled work limited to "simple unskilled work . . . that does not require team work or working with the public" (Tr. 81) are greater than those in *Edwards* restricting the claimant to simple, routine, unskilled work.  Even assuming that *Edwards* actually set forth a hard and fast rule for accounting for concentrational limitations, the added restriction of "no team work" which would preclude all "assembly line" work, accounts for moderate deficiencies in "persistence" or "pace."

In summary, I note that the transcript reflects some level of physical and psychological limitation and my recommendation to uphold the administrative findings should not be read to trivialize those conditions.  Nonetheless, because the ALJ's decision was well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen, supra*.

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #24] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #19] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

Date: October 19, 2020                    s/R. Steven Whalen
                                          R. Steven Whalen
                                          United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record on October 19, 2020 electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager